UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RONALD MCMAHAN, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-220-CCB-SJF |
| WILLIAM WILSON, et al., | |
| Defendants. | |

**OPINION AND ORDER**

Ronald McMahan, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983 and a motion for a preliminary injunction. (ECF 1, 3.) As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). McMahan is proceeding without counsel, and therefore the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## FACTS

McMahan is in inmate at the Westville Control Unit ("WCU"), a long-term segregation unit. In 2022, he was at a different facility where he was found guilty of violating the disciplinary code and sentenced to serve a term in disciplinary segregation. When his term was up he thought he would be released, but instead he was sent to another facility and held in their administrative segregation unit. He claims that staff at the new facility were supportive of his release to general population, but he still was not released. In October 2023, it was decided by Deputy Commissioner William Wilson that he would be sent to WCU and remain in segregation. He claims there was an inadequate basis to send him to WCU because he is not a violent or troublesome prisoner. He further claims that Indiana Department of Correction ("IDOC") central office staff and employees at WCU have conducted perfunctory reviews of his placement without giving him an opportunity for input. He has made repeated requests to be transferred out of WCU to general population but these requests have been denied.

He also claims that the conditions in WCU are deplorable. For the first several months he was in a cell with mold, blood, and feces on the walls. He also had no running water and could only drink "burning hot" water in the shower. After numerous complaints he was moved to a different cell, but he claims that cell has mice and roaches "as big as alley cats." He also states that his toilet was broken for three months beginning in December 2024, causing a constant build-up of feces in his toilet. Additionally, he claims meals are left out for hours in his unit before they are served to

inmates. Because of the excessively dirty conditions, he claims to have been served food containing "rat hair" and "rat feces."

As a result of his time in WCU, his mental state has become "unstable." He feels depressed and has considered harming himself. He has filed numerous requests "begging for mental health care" but no one responds, or he is told he does not meet the criteria for mental health services. Based on these events, he seeks monetary damages from eleven IDOC employees, as well as injunctive relief.

## ANALYSIS

  1.  *Mental Health Treatment*

He first claims he has depression and thoughts of self-harm that are not being addressed. Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. This includes appropriate measures to address the risk of self-harm from suicide. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021). The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In effect, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

Giving McMahan the inferences to which he is entitled at this stage, he has alleged a serious medical need in connection with his mental health problems and suicidal ideations. However, he does not clearly identify the individuals to whom he directed his requests for mental health treatment, nor does he sue any member of the medical staff at the prison. He mentions an unidentified "lady with a clipboard" who told him "she's not allowed to talk to [him]," but she does not appear to be one of the named defendants, nor does he provide enough detail about their interactions to state a plausible claim against her under federal pleading standards.[1]

---

[1] An attachment to the complaint mentions a "Ms. Halcarz," who appears to be a mental health provider at the prison, but he does not name this individual as a defendant or include factual allegations about her. (ECF 1-1 at 1.)

4

Nevertheless, he claims to have ongoing mental health concerns that are not being adequately addressed. Warden Jason Smiley has both the authority and the responsibility to ensure that inmates at his facility are provided medical care to address serious medical needs as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). McMahan will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his need for mental health treatment.

  2.   *Due Process Protections*

McMahan also alleges that his Due Process rights were violated by IDOC central office staff and WCU staff in connection with his transfer and continued detention at WCU. Prisoners do not have a constitutional right to the housing assignment of their choice, and where best to house a prisoner is ordinarily a matter that is committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). The Fourteenth Amendment Due Process Clause does not create a liberty interest in avoiding transfer within a correctional facility or in remaining in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, Due Process protections are only required when a liberty interest is at stake. *Sandin*, 515 U.S. at 484-85. To trigger a liberty interest, an inmate must be subjected to restrictive conditions that present a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Id.* at 476. There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the

5

duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019).

McMahan has been in restrictive housing at WCU for more than a year, which is a lengthy period. However, because he was already in administrative segregation at another prison when he was transferred to WCU, it is questionable whether he had a liberty interest in avoiding the transfer. *Lagerstrom v. Kingston*, 463 F.3d 621, 623 (7th Cir. 2006) ("*Wilkinson* is derived from the drastic change in the conditions of confinement. That kind of change might not be present if, for example, the inmate was already confined to segregation."). Additionally, he does not describe any specific limitations on his movements for the court to plausibly infer that he is being subjected to restrictive conditions that present a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Id.* at 476.

Assuming he plausibly alleges the existence of a liberty interest in connection with his detention at WCU, the demands of Due Process are not onerous in this context and inmates are only entitled to "some informal, nonadverserial" process. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process requires "some notice" of the reason for the inmate's placement in long-term segregation and an opportunity to present his views. *Id.* The inmate is also entitled to periodic reviews of his placement. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review procedures "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686 (citation omitted). In short, "the requirements of informal due

process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

McMahan appears to complain that he was not given a full hearing before his transfer, similar to a disciplinary proceeding, but this was not a right he was entitled to under applicable law. *Westefer*, 682 F.3d at 684-85. Although he suggests that he does not know why he was transferred to long-term segregation, available records provide additional context behind the transfer. Documents he attaches to his motion for a preliminary injunction reflect that he has committed eleven disciplinary offenses since arriving at IDOC in 2015, including five A-level offenses. (ECF 3-1 at 9.) Public records reflect that one of these offenses involved a scheme to engage in trafficking at the prison.[2] *McMahan v. Warden*, No. 3:18-CV-879-RLM-MGG (N.D. Ind. closed Feb. 5, 2020). Specifically, in 2018, he was found to be in possession of a cell phone; a review of the phone's contents showed that he had sent multiple messages to women outside the prison, including his sister, asking them to apply for correctional officer positions (and giving them instructions on how and where to apply) so they could assist him with a trafficking scheme. *Id.*, ECF 10. In 2022, he received an additional conduct report for possession of a cell phone. (ECF 1 at 10; ECF 3-1 at 7). After serving his time in disciplinary segregation for that offense, he received paperwork indicating that he would be kept in administrative segregation due to "trafficking conduct and safety and security concerns." (ECF 3-1 at 4.)

---

[2] The court is permitted to take judicial notice of public records at the pleading stage. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647 (7th Cir. 2018).

7

It is clear he disagrees with his placement, but he does not have a constitutional right to the housing assignment of his choice. *Meachum*, 427 U.S. at 224. He is entitled to some opportunity to present his views about his placement, but it is clear from his allegations and the documents he has provided that he was told the reason for his placement and had an opportunity to present his views through grievances and classification appeals. It is also apparent that he is receiving periodic reviews of his placement. (*See* ECF 3-1 at 1-14.) He believes they are perfunctory, but the requirements of informal due process afford "substantial discretion and flexibility" to prison officials. *Id.* The court cannot plausibly infer from the complaint that he has been denied the minimal requirements of Due Process.

   3.   *Conditions of Confinement*

He also asserts that he has been subjected to excessively dirty conditions. In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, water, shelter, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Giving McMahan the favorable inferences to which he is entitled at this stage, he has plausibly alleged that he was denied the minimal civilized measure of life's necessities due to his exposure to mold, insects, feces on the walls, a broken toilet, contaminated food, and a lack of adequate drinking water. *See Smith v. Dart*, 803 F.3d 304, 312-13 (7th Cir. 2015) (prolonged exposure to insects can amount to an Eighth Amendment violation, and inmates are also entitled to "adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it"); *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (inmates have a right "not to be forced to live surrounded by their own and others' excrement" and to adequate drinking water).

He asserts that he brought these conditions to the attention of Unit Manager Tracy Cornett, Captain Lewis, Major Cornett, Officer Evans, Officer Burke, Officer Rippe, Officer Clemens, and Case Manager Gulleson. It can be inferred from his allegations that all of these individuals were physically present in the unit and saw the conditions on a number of occasions. However, they allegedly ignored him or told him to "tough it out." He has alleged enough to proceed further against these defendants under the Eighth Amendment. *See Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

He also seeks to hold Warden Smiley liable for the conditions in his unit. There is no *respondeat superior* liability under 42 U.S.C. § 1983, however, and the Warden cannot be held liable for damages solely because he oversees operations at the prison. *Mitchell*

9

*v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). There is an insufficient basis in the complaint for the court to plausibly infer that this high-ranking official had personal knowledge of the conditions in McMahan's cell and deliberately turned a blind eye to them.[3] He will not be permitted to proceed against the Warden for damages.

### MOTION FOR PRELIMINARY INJUNCTION

McMahan separately moves for a preliminary injunction. (ECF 3.) The motion is not a model of clarity, but he appears to seek a transfer out of WCU and/or mental health treatment. (ECF 3.) "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a

---

[3] McMahan asserts in a grievance attached to the complaint that he wrote to the Warden about a problem with the conditions in his cell. (ECF 1-1 at 10.) It is not clear when he did this or what conditions he mentioned. However, merely writing a letter to a high-ranking official is an insufficient basis to hold him liable for damages. As the Seventh Circuit has explained: " [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [a resolution of the problem]. That can't be right." *Burks*, 555 F.3d at 595.

mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions— "those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer*, 682 F.3d at 681; *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

McMahan states in his motion that he wants an immediate transfer out of WCU, but he is not being granted leave to proceed on a Due Process claim related to his

11

continued detention there. The court cannot grant him injunctive relief related to issues that fall outside the scope of this case. *Westefer*, 682 F.3d at 681. The court also understands him to be arguing that he needs immediate treatment for mental health problems while he remains in WCU.[4] At present, the court only has McMahan's version of events and it is difficult to determine on this limited record whether he is likely to prove that he is receiving constitutionally inadequate medical care for a serious medical need. In light of the deference owed to prison officials and the limitations on granting injunctive relief in the correctional setting, the court will order the Warden to respond before taking further action on McMahan's request for a preliminary injunction.

For these reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against Warden Jason Smiley in his official capacity for injunctive relief related to the plaintiff's ongoing need for mental health treatment for depression and thoughts of suicide;

(2) **GRANTS** the plaintiff leave to proceed against Unit Manager Tracy Cornett, Captain Lewis, Major Cornett, Officer Evans, Officer Burke, Officer Rippe, Officer Clemens, and Case Manager Gulleson in their personal capacity for money damages for denying him the minimal civilized measures of life's necessities at WCU in violation of the Eighth Amendment;

(3) **DISMISSES** William Wilson, Jack Hendrix, and K. Shepard as defendants;

---

[4] He does not mention any problems with the dirty conditions at WCU in his motion for a preliminary injunction and does not appear to seek emergency relief related to such issues. (ECF 3.) If the court has misunderstood him, he is free to file an amended motion for a preliminary injunction outlining what emergency relief is needed related to the conditions.

(4) **DISMISSES** all other claims;

(5) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Jason Smiley, the Warden of Westville Correctional Facility, by email to the Indiana Department of Correction with a copy of this order, the complaint (ECF 1), and the motion for a preliminary injunction (ECF 3) pursuant to 28 U.S.C. § 1915(d);

(6) **DIRECTS** the clerk to fax or email a copy of the same documents to the Warden of Westville Correctional Facility at Westville Correctional Facility;

(7) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Unit Manager Tracy Cornett, Captain Lewis (first name unknown), Major Cornett (first name unknown), Officer Evans (first name unknown), Officer Burke (first name unknown), Officer Rippe (first name unknown), Officer Clemens (first name unknown), and Case Manager Gulleson (first name unknown) at the Indiana Department of Correction and to send them a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(8) **ORDERS** the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(9) **ORDERS** the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **May 5, 2025**, with supporting documentation and declarations from staff as necessary, addressing the plaintiff's current mental health,

including whether he poses a risk of suicide, and the steps if any being taken to address these issues; and

(10) **ORDERS** Warden Jason Smiley, Unit Manager Tracy Cornett, Captain Lewis, Major Cornett, Officer Evans, Officer Burke, Officer Rippe, Officer Clemens, and Case Manager Gulleson, to respond as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 14, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT