**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

RONALD MCMAHAN,

Plaintiff,

v.

WILSON, et al.,

Defendants.

CASE NO. 3:25-cv-00220-SJF

**OPINION AND ORDER**

On March 14, 2025, the Court screened the complaint filed by Plaintiff Ronald McMahan, a prisoner without lawyer, under Title 28, United States Code, Section 1915A.[1] [DE 4]. The Court granted Plaintiff leave to proceed against Warden Jason Smiley in his official capacity for injunctive relief related to the mental-health treatment, and against Unit Team Manager Tracy Cornett, Major Chad Cornett, Captain Gary Lewis, Captain Jason Rippe, Case Manager Dennis Gulleson, Officer Xavier Evans, Sergeant Michael Burke, and Officer Michael Clemmons in their personal capacities for money damages for allegedly denying him the minimal civilized measure of life's necessities in the Westville Correctional Facility ("WCF"). [DE 4 at 12; DE 83 ¶¶ 1–2]. After Plaintiff was transferred to the Pendleton Correctional Facility, the Court dismissed the claim against Warden Smiley as moot. [DE 70 at 3].

[1] While "Wilson" is not among the Defendants against whom Plaintiff was granted leave to proceed, and while no such Defendant has appeared in this action, the caption is retained as filed.

On February 13, 2026, the eight remaining Defendants moved for summary judgment on the merits of Plaintiff's claims against them. [DE 82]. Plaintiff responded on April 29, 2026, and Defendants replied on May 13, 2026. [DE 89; DE 91]. The motion is fully briefed and ripe for ruling. Defendants have not moved for summary judgment on exhaustion, an affirmative defense they must plead and prove. *See Jones v. Block*, 549 U.S. 199, 216 (2007). The Court therefore does not address exhaustion.

The Court enters the following ruling based on the parties' consent to the jurisdiction of the undersigned. 28 U.S.C. § 636(c); [DE 39]. For the reasons below, Defendants' motion for summary judgment is granted in part and denied in part.

## I. Factual Background

Plaintiff failed to file a Response to Defendants' Statement of Material Facts. [*See generally* DE 89]. Plaintiff was not obligated to restate Defendants' Material Facts verbatim, but he was still required to provide numbered responses. N.D. Ind. L.R. 56-1(b)(2)(A)–(C), 56-1(b)(3). Instead, Plaintiff filed what amounts to Additional Material Facts. *Id.* 56-1(2)(D). The Court could be justified in adopting Defendants' Statement of Material Facts in its entirety. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("[s]ubstantial compliance is not strict compliance."); *Turner v. Cox*, 569 F. App'x 463, 467 (7th Cir. 2014). Although a court is entitled "to insist on strict compliance with local rules designed to promote the clarity of summary judgment," the district court has the discretion to overlook any noncompliance. *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011). Thus, the Court considers both sides' Material Facts. To the extent they conflict, the Court treats those facts as disputed.

On October 25, 2023, Plaintiff arrived at the WCF in Indiana, where he remained for over twenty-one months. [DE 83 ¶¶ 8, 9]. While held at the WCF, Plaintiff was confined to his cell for most of each day. [DE 80 at 25:25, 26:1–2]. He occupied four different cells during that twenty-one-month period at the WCF. [DE 83 ¶¶ 12–15]. Plaintiff's claim stems from conditions in all four cells.

Plaintiff claims that for the first several months at the WCF he was housed in a cell with mold, blood, and feces on the walls. [DE 83 ¶ 3]. He claims he lacked access to running water because the sink would not work. [DE 83 ¶¶ 4, 70]. This forced him to fill bowls with hot water from the showers to bring back for drinking. [*Id.*]. Plaintiff claims the shower water made his stomach cramp. [DE 1-1 at 3]. Plaintiff was then moved to a second cell, which he claims had mice and cockroaches. [DE 83 ¶ 5]. Plaintiff alleges that his meal trays were left out for hours before he could eat, allowing rats to eat part of his food and contaminate the food with rat hair and rat feces. [DE 83 ¶ 6; DE 1-1 at 10]. Although his belief that food contained rat hair or feces was not based on testing or medical confirmation, Plaintiff states he found hair in his food and holes chewed through bread. [DE 83 ¶ 27; DE 1-1 at 10]. Plaintiff even found cockroaches in his breakfast cereal. [DE 1-1 at 10].

Plaintiff alleges that in all his cells the toilets were recurrently not flushing, which caused a build-up of feces and urine. [DE 83 ¶ 7]. Plaintiff had to cover the toilets with trash bags. [DE 80 at 8:22–25, 12:10–25]. Plaintiff says he was then forced to defecate in sandwich bags and newspapers and throw waste away on his shower days. [DE 89 ¶ 14; DE 1-1 at 5]. Plaintiff also alleges he was unable to keep his cell clean.

Apparently, the WCF only provided him with a broom to sweep with, and he was not given a mop, toilet brush, or any cleaning chemicals when he asked for those items. [DE 80 at 10:1–16].

Plaintiff verbally complained about these issues to the WCF staff. [DE 83 ¶¶ 28–30]. Plaintiff also filed numerous grievances while at the WCF. [DE 1-1]. He did not name any of the defendants by name in these grievances, but he did complain to some "[correctional officers]" and other administrative staff about the issues he experienced. [DE 1-1 at 3]. Plaintiff did complain in writing about correctional officers ignoring him and states it would be unrealistic to name all of them in a written grievance. [DE 1-1 at 5; DE 89 ¶ 15]. Some WCF staff told Plaintiff that they put work orders in. [*See* DE 83 ¶ 19]. Maintenance eventually repaired the plumbing in each cell, but according to Plaintiff, the repairs sometimes took weeks or months. [DE 83 ¶¶ 17–19]. Plaintiff believes that his complaints were largely ignored, that staff would falsely tell him a work order was entered. [DE 80 at 12:23–25, 13:1–2]. Plaintiff asserts that he had to personally "flag down" maintenance workers when they were at the WCF to fix other issues. [DE 89 ¶ 10]. He believes the lack of work-order documentation shows that none were entered. [DE 89 ¶ 18; DE 83 ¶ 37]. He believes the defendants were deliberately indifferent because they allegedly told him to "tough it out" and that it was his own fault for being in the WCF. [DE 89 ¶ 20].

Plaintiff's testimony concerning each Defendant differs in important respects. Tracy Cornett made rounds at the WCF and, according to Plaintiff, he spoke to her once or twice each week throughout his confinement. [DE 80 at 24:18–24]. He testified that he

repeatedly told her about the plumbing, water, insects, and other conditions, showed her what could be seen through the cell door, and was repeatedly told to take the issue to the pod sergeant. [DE 80 at 26–27]. Tracy Cornett denies receiving those complaints and denies ignoring them. Her affidavit states, however, that if an inmate reported a maintenance or sanitation concern, her practice was to notify the appropriate party and make sure a work order was placed if needed. [DE 82-5 ¶¶ 7–14].

Plaintiff testified that Chad Cornett made rounds at least weekly and that he complained to him about plumbing, lack of water, material on the walls, and rodents. [DE 80 at 29–30]. According to Plaintiff, Chad Cornett repeatedly responded that he would put in a work order. [DE 80 at 30:6–15, 32:8–16]. Chad Cornett denies receiving the complaints. His affidavit states that, when an inmate reports a maintenance or sanitation concern, his practice is to notify the appropriate section, make sure a work order is placed when necessary, and follow up the next time he makes rounds. [DE 82-6 ¶¶ 7–8, 11–13].

Next, Plaintiff testified that Captain Rippe made rounds at least weekly, that he repeatedly told Rippe about plumbing issues, lack of water, the feces and blood on the walls, and the rodents, and that Rippe said he put in a work order. [DE 80 at 39–41]. Rippe denies receiving those complaints. His affidavit states he had authority to pull inmates from their cells for cleaning, place a work order, and follow up on its completion. [DE 82-8, ¶¶ 7, 10–12].

Next, Plaintiff testified that Sergeant Burke saw him whenever Burke worked on his pod, entered his cells during shower or recreation movements, checked the

plumbing and water, and heard complaints about plumbing, water, feces and blood on the walls, rodents, and lack of cleaning chemicals. [DE 80 at 48–50]. Burke acknowledges that Plaintiff complained about plumbing and once about mold, but he attests he made sure work orders were placed, that maintenance typically responded within one day, and that he never saw or was told about feces or blood in the cells. [DE 82-11 ¶¶ 6–10]. Sergeant Burke attests that maintenance would often respond to his work orders within a day, but maintenance would find nothing wrong. [DE 83 ¶ 62]. He also attests that Plaintiff frequently clogged his own toilet when Plaintiff's water-pressure complaints were not dealt with to his own liking. [DE 83 ¶ 63].

Finally, Plaintiff testified he complained to Captain Lewis during weekly rounds and that Captain Lewis said he had put in a work order. [DE 80 at 35–37]. Captain Lewis denies that he was assigned to Plaintiff's cell unit and denies any contact with Plaintiff. [DE 82-7 ¶ 3].

The remaining three Defendants stand differently. Plaintiff testified that Officer Evans received his plumbing and water complaints and said he had reported a work order to his captain. [DE 80 at 44–46]. Likewise, Evans attests that each plumbing complaint was reported to his supervisor and addressed through the work-order process. [DE 82-10 ¶¶ 6, 10]. Plaintiff testified that Officer Clemmons said he would tell a sergeant to submit a work order because Clemmons could not submit one himself. [DE 80 at 53:1–55:10]. Clemmons' affidavit confirms that, as an officer, he could only notify a supervisor. [DE 82-12 ¶ 8]. Plaintiff testified that Case Manager Gulleson told him he would report the complaints to the pod sergeant or lieutenant. [DE 80 at 57–59].

Gulleson's affidavit states he could not submit work orders and that his role was to notify a correctional officer. [DE 82-9 ¶ 11].

None of the eight defendants were personally able to repair the plumbing issues in Plaintiff's cells. [DE 83 ¶ 32]. None of them were responsible for food preparation or pest control. [DE 83 ¶ 33, 34]. Their sole responsibility in addressing Plaintiff's conditions was limited to reporting any issues and placing work orders. [DE 83 ¶ 35]. A separate maintenance team then fulfills work orders. [DE 83 ¶ 36].

No work order concerning Plaintiff's cells has been recovered. Maintenance Foreman Mile Albert explains that IDOC discontinued the work-order system during the relevant period, works orders were tracked informally during the transition, and the replacement system contains records only from April 2025 forward. [DE 91-1 ¶¶ 3–16]. Albert conducted a diligent search but found no recoverable work orders. [DE 91-1 ¶¶ 17–18].

Plaintiff did not seek medical treatment for any injury caused by the challenged conditions, and no medical provider told him the conditions caused an illness or injury. [DE 80 at 65:2–22, 73–74; DE 83 ¶¶ 42–46].

## II. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence and draws reasonable inferences in the nonmovant's favor,

but it does not weigh evidence or resolve credibility disputes. *Id.* at 249, 255; *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

Opponents to summary judgment must assert more than some metaphysical doubt as to the material facts. *Scott v. Harris*, 550 U.S. 372, 381 (2007). They must present sufficient evidence to show the existence of each element of their case on which they will bear their burden at trial. *Celotex*¸ 477 U.S. at 322–23; *Modrowksi v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). A party opposing summary judgment must support an assertion that a fact is genuinely disputed by citing to particular materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "If the opposing party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2).

"[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. *Scott*, 550 U.S. at 380 (citing Fed. R. Civ. P. (56(c)). A court's role is "not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is a material dispute that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Where sworn accounts genuinely conflict on a material point, the Court cannot decide which account is true at summary judgment. *Miller*, 761 F.3d at 827.

## III. Discussion

### A. Eighth Amendment Framework

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate sanitation and other basic necessities. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An inhumane-conditions claim requires both an objectively serious deprivation and deliberate indifference by the particular defendant. *Id*. at 834, 837. Deliberate indifference is more than negligence, it requires the official to know of and disregard an excessive risk to inmate health or safety. *Id*. at 836, 837. An official who takes measures reasonably calculated to address a known risk does not violate the Constitution merely because those measures fail. *Farmer*, 511 U.S. at 844–45; *Hunter v. Mueske*, 73 F.4th 561, 566–68 (7th Cir. 2023); *see also Gills v. Hamilton*, 164 F.4th 640, 647 (7th Cir. 2026).

Section 1983 does not impose vicarious liability and an officer's notice of a problem does not create a free-floating obligation to perform another employee's job. *Burks v. Raemisch*, 555 F.3d 592, 593–96 (7th Cir. 2009). More recently, the Seventh Circuit reiterated that knowledge of unconstitutional conditions supports liability only where the defendant also has some authority over the conditions and responsibility to address them. *Adams v. Reagle*, 91 F.4th 880, 894 (7th Cir. 2024). The inquiry, therefore, is defendant-specific and requires determining what an official knew, what an official had authority to do, what an official actually did, and whether any deliberate failure to act caused a continued deprivation. *See Hunter*, 73 F.4th at 566–70.

**B. A Jury Could Find the Combined Conditions Objectively Serious**

Viewed in Plaintiff's favor, the record describes more than an inconvenient sink or a temporarily clogged toilet. Plaintiff raises repeated periods of un-flushable toilets

containing accumulated waste, extended periods without in-cell drinking water, feces and blood on the walls, vermin, and little meaningful ability to clean the cells. He says these conditions recurred across four cells for approximately twenty-one months and that plumbing repairs sometimes took weeks or months.

The Seventh Circuit has repeatedly recognized that exposure to human waste, lack of running water, vermin, and inadequate cleaning supplies can satisfy the objective component, especially when considered together and over time. *See Johnson v. Pelker*, 891 F.2d 136, 139–40 (7th Cir. 1989); *Vinning-El v. Long*, 482 F.3d 923, 924–25 (7th Cir. 2007); *Gray v. Hardy*, 826 F.3d 1000, 1005–06 (7th Cir. 2016). In *Gills v. Hamilton*, the court again emphasized that "egregiously unsanitary conditions" satisfy the objective prong, while also distinguishing the mere absence of an in-cell sink or toilet from prolonged exposure to waste without a meaningful means to clean oneself. 164 F.4th 640, 646 (7th Cir. 2026).

An absence of a documented physical injury does not eliminate a constitutional claim either. It may affect the available damages, but it does not bar the action. *See Calhoun v. DeTella*, 319 F.3d 936, 940–41 (7th Cir. 2003). Moreover, Plaintiff complained of stomach cramping after drinking the shower water. On this record, a reasonable jury could find the combined plumbing, water, and sanitation conditions objectively serious.

### C. Personal Responsibility, Deliberate Indifference, and Causation

The subjective and causation inquiry cannot be answered collectively. Plaintiff concedes that none of the Defendants personally repaired plumbing, performed pest-control services, or prepared food. [DE 83 ¶¶ 32–34]. Nonetheless, the record also

identifies limited measures some Defendants could take, such as reporting a maintenance or sanitation problem, placing or ensuring a work order, following up on an unresolved work order, or arranging cell cleaning. [DE 82-5 ¶ 10; DE 82-6 ¶ 11; DE 82-8 ¶ 10; DE 82-11 ¶ 13]. Liability may attach only if a particular Defendant knew of a sufficiently serious condition and deliberately failed to take a reasonable measure within that defendant's authority. *Adams*, 91 F.4th at 894; *Hunter*, 73 F.4th at 566–68. The Court relies on these descriptions of Defendants' practices only as evidence of the measures available within each Defendant's authority, and a failure to follow an institutional practice, on its own, does not establish an Eighth Amendment violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

**1. Tracy Cornett, Chad Cornett, Jason Rippe, Gary Lewis, and Michael Burke**

Summary judgment is not appropriate for Tracy Cornett. Plaintiff testified that he spoke to her once or twice a week, repeatedly identified plumbing, water, insect, and sanitation problems, and showed her what could be seen through the cell door. [DE 80 at 24:18–27:24]. He says her repeated response was to tell him to take the issue to the pod sergeant. [*Id.*]. Her affidavit, however, states that when an inmate reports a maintenance or sanitation concern, her practice is to notify the appropriate party and make sure a work order is placed if needed. [DE 82-5 ¶ 10]. If a jury credits Plaintiff's account, it could find that Tracy Cornett repeatedly encountered the same serious conditions yet redirected him without taking the measure she herself identifies are within her role. *Hunter* does not require the best possible response, but it does require a

response reasonably calculated to address the known risk. 73 F.4th at 566–68. Whether Tracy Cornett's conduct met that standard is a jury question.

The same is true for Chad Cornett. Plaintiff testified that he complained to Chad Cornett at least weekly and was repeatedly told that a work order would be entered. [DE 80 at 29–32]. Chad Cornett denies receiving the complaints, but his affidavit states that when a concern is reported he would notify the proper section, make sure a work order was placed, and follow up the next time he made rounds. [DE 82-6 ¶ 11]. If the jury credits Plaintiff's account that the same serious conditions remained over repeated weekly encounters, it could infer that Chad Cornett failed to perform the follow-up function he says was within his authority, or consciously disregarded evidence that the initial response was not abating the problem. The Court cannot resolve that conflict on summary judgment.

Captain Rippe likewise is not entitled to summary judgment. Plaintiff says he complained to Rippe repeatedly about the plumbing, water, feces and blood on the walls, and rodents, and that Rippe could see into the cell during rounds. [DE 80. at 39–41]. Rippe denies receiving those complaints, but he acknowledges authority to pull inmates out for cell cleaning, place a work order, and follow up on its completion. [DE 82-8 ¶ 10]. Thus, unlike an official with no power over the complained-of condition, Rippe identifies concrete measures within his authority. A jury crediting Plaintiff could find that Rippe knew the conditions persisted and failed to use those measures. *See Adams*, 91 F.4th at 894; *Gray*, 826 F.3d at 1008.

Burke presents a direct conflict. Plaintiff testified that Burke entered his cells several times a week, checked the plumbing and water, saw the cell conditions, and heard complaints about feces, blood, rodents, and lack of cleaning materials. [DE 80 at 48–50]. Burke attests that he made sure work orders were placed, that maintenance typically responded within one day, and that he never saw or was told about feces or blood. [DE 82-11 ¶¶ 6–10]. Burke's statement that Plaintiff clogged the toilets intentionally may be relevant to determining an Eight Amendment violation, but clogging a toilet does not on its own mean that prison officials may ignore such a problem for months. Those sworn accounts differ on both what Burke knew and whether the problems remained unresolved after his response. Because Burke also states that a maintenance or sanitation concern was something he could address himself or report to a supervisor, [DE 82-11 ¶ 13], the dispute is material. A jury must decide which account to believe.

Gary Lewis denies any assignment to Plaintiff's cell unit and any contact with him. [DE 82-7 ¶ 3]. Plaintiff's contrary testimony creates a credibility dispute about contact, and the Court therefore assumes for present purposes that the conversations occurred. Plaintiff alleges that Lewis told him that he had put in a work order. Gary Lewis is a Utility Lead Captain at WCF and is responsible "for supervising daily operations, maintaining the safety and security of both inmates and staff, and managing incident response, including thorough documentation and reporting." [DE 53 at 1]. Lewis' own statement acknowledges some authority and management over inmate safety and operations. The exact contours of his role are albeit vague, but it suggests

that Lewis had authority and responsibility to handle the sanitation and food preparation complaints. The dispute over whether Lewis was involved with Plaintiff's unit remains unfit for summary judgment.

Section 1983 requires that a defendant's deliberate indifference cause the constitutional injury, *Hunter* 73 F.4th at 566–70, and on this claim, the relevant injury is continued exposure to allegedly unconstitutional conditions. If an official with authority to initiate or follow-up on corrective measures knowingly refuses to use that authority, a jury may find the refusal prolonged the deprivation. That is a foreseeable consequence of failing to address the very condition the official is told about. *See Johnson*, 891 F.2d at 139–40; *Vinning-El*, 482 F.3d at 924–25. Despite Plaintiff stating that the underlying problem did not originate from any particular Defendant, that statement does not foreclose this narrower theory of causation. [*See* DE 83 ¶ 41].

**2. Dennis Gulleson, Xavier Evans, and Michael Clemmons**

Gulleson, Evans, and Clemmons are entitled to summary judgment because the evidence shows their responses were reasonably calculated to route the complaints to officials who could act. Gulleson could not submit a work order; Plaintiff says Gulleson told him he would report the problem to the pod sergeant or lieutenant, which is also what Gulleson stated he did in his affidavit. [DE 80 at 59:3–10; DE 82-9 ¶ 11]. Clemmons likewise could not submit a work order himself; Plaintiff testified that Clemmons said he would tell a sergeant to submit one. [DE 80 at 55:1–10; DE 82-12 ¶ 8]. Plaintiff testified that Evans told him he reported the work order through his captain, and Evans attests each plumbing complaint was reported to a supervisor and addressed through

work orders. [DE 80 at 46:11–20; DE 82-10 ¶¶ 6, 10]. Plaintiff offers no evidence, nor does he definitely dispute, that these referrals were not made. Plaintiff's Additional Material Facts only disputes whether the work orders themselves were submitted. The fact that maintenance sometimes responded slowly does not permit liability against officials who performed the action within their authority and had no demonstrated power to expedite the repair. *See Hunter*, 73 F.4th at 568–69; *Burks*, 555 F.3d at 595–96.

**D. The Missing Work Orders Do Not Resolve the Dispute**

Plaintiff relies heavily on the absence of recoverable work-order records. That absence proves neither side's version. Albert's affidavit explains the relevant system was discontinued, the records were tracked informally during the transition, and that no pre-April 2025 work orders are available in the current system. [DE 91-1 ¶¶ 3–18]. The Court therefore draws no adverse inference merely because a historical work order cannot now be produced. At the same time, however, Albert's affidavit does not prove that a particular Defendant actually placed or followed up on a work order. For the four Defendants whose liability survives, that question is resolved by the competing evidence described above, not by missing records.

**E. Pest Control, Cleaning, and Food**

No Defendant was responsible for pest-control services. [DE 83 ¶ 34]. Accordingly, Plaintiff cannot proceed on a freestanding theory that these Defendants violated the Constitution by failing personally to exterminate his cells. *See Adams*, 91 F.4th at 894; *Burks*, 555 F.3d at 595–96. Evidence of vermin nevertheless remains relevant

to the severity and obviousness of the overall sanitation conditions and to whether a Defendant who possessed authority over cleaning or maintenance understood the risk.

The cleaning-supply evidence likewise must be tied to individual authority. Plaintiff testified chemicals were available only a handful of times and that staff often told him the institution had none. [DE 80 at 10:5–11:16]. A generalized shortage does not establish personal liability. But Rippe's admitted authority to arrange cell cleaning, Burke's asserted ability to address sanitation concerns, and Tracy and Chad Cornett's asserted sanitation-referral responsibilities are part of the surviving claim to the extent a jury finds they knew of seriously unsanitary conditions and failed to take reasonable measures within those roles. [DE 82-5 ¶ 10; DE 82-6 ¶ 11; DE 82-8 ¶ 10; DE 82-11 ¶ 13].

**F. Qualified Immunity**

Qualified immunity protects officials from damages unless their conduct violated a constitutional right that was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). The defense must be evaluated on the facts viewed in the nonmovant's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Gulleson, Evans, and Clemmons are entitled to judgment as a matter of law, so the Court need not separately decide qualified immunity for them. As to Tracy Cornett, Chad Cornett, Jason Rippe, Gary Lewis, and Michael Burke, the disputed facts preclude qualified immunity at summary judgment. Long before 2023, *Johnson* held that three days in a cell smeared with feces and without running water could violate the Eighth Amendment when requests for water and cleaning supplies were ignored. 891 F.2d at 139–40. *Vinning-El* later reversed summary judgment where the plaintiff described a

broken sink and toilet, blood and feces on the walls, and lack of sanitation supplies. 482 F.3d at 924–25. *Gray* likewise held vermin and inadequate cleaning supplies, considered together, could support an Eighth Amendment claim. 826 F.3d at 1005–06. And *Taylor v. Rojas* confirmed that extreme exposure to human waste can be so obviously unconstitutional that no case with identical facts is required. 592 U.S. 7, 8–9 (2020) (per curiam).

The relevant right cannot be defined at a high level of generality. Taking Plaintiff's supported version of the facts as true, the question is whether, by 2023, it was clearly established that an official who repeatedly knew an inmate was being confined for prolonged periods with accumulated human waste, nonfunctioning plumbing or water, and seriously unsanitary cell conditions could not deliberately decline to use corrective measures within that official's authority. *Johnson*, *Vinning-El*, and *Taylor* supplied that notice. Whether referring a complaint to maintenance is unconstitutional is not relevant here because a reasonable referral may defeat liability. If the jury credits Plaintiff's account that these five Defendants knew of the conditions and failed to use measures they possessed, there has been fair warning provided that such conduct was unlawful. And if the jury instead finds the Defendants took reasonable measures, there will be no constitutional violation. Qualified immunity therefore cannot be resolved in their favor by assuming their disputed version of the facts.

**G. Punitive Damages**

Punitive damages may be awarded under § 1983 when a defendant acts with evil motive or intent or with reckless or callous indifference to federally protected rights.

*Smith v. Wade*, 461 U.S. 30, 56 (1983). The claim survives only against Tracy Cornett, Chad Cornett, Jason Rippe, Gary Lewis, and Michael Burke. If a jury credits Plaintiff's evidence that one of those Defendants repeatedly observed or was told of extreme sanitation condition yet consciously failed to use measures within that Defendants authority, the same evidence could support a finding of reckless or callous indifference. The Court cannot resolve that state-of-mind question on the present record. Defendants' motion is therefore denied as to punitive damages against those four Defendants. Nonetheless, because Plaintiff has offered minimal evidence of physical injury attributable to the challenged conditions, Title 42, United States Code, Section 1997e(e) may bar compensatory damages for mental or emotional injury. It does not bar nominal damages or, upon the required showing, punitive damages for the constitutional violation itself. *Callhoun*, 319 F.3d at 940–41.

## IV. Conclusion

For these reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion for Summary Judgment [DE 82] as follows:

(1) Summary judgment is **GRANTED** in favor of Defendants Dennis Gulleson, Xavier Evans, and Michael Clemmons on all claims against them.

(2) Summary judgment is **DENIED** as to the Eighth Amendment conditions-of-confinement claim against Defendants Tracy Cornett, Chad Cornett, Jason Rippe, Gary Lewis, and Michael Burke concerning the plumbing, water, and sanitation conditions described above.

(3) Summary judgment is **GRANTED** in favor of all Defendants on any standalone pest-control theory and on the food-contamination theory. Evidence of vermin and tray-storage conditions may remain relevant to the surviving sanitation claim to the extent otherwise admissible.

(4) Qualified immunity is **DENIED** at this stage as to Tracy Cornett, Chad Cornett, Jason Rippe, Gary Lewis, and Michael Burke.

(5) Summary judgment on punitive damages is **DENIED** as to Tracy Cornett, Chad Cornett, Jason Rippe, Gary Lewis, and Michael Burke.

The case will thus proceed against Tracy Cornett, Chad Cornett, Jason Rippe, Gary Lewis, and Michael Burke on the surviving Eighth Amendment claim and associated requests for nominal damages and, if the required showing is made, punitive damages. Compensatory damages for mental or emotional injury are unavailable absent the showing required by 42 U.S.C. § 1997e(e).

**SO ORDERED** this 28th day of September 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge